IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROYAL JOSEPH WRIGHT, JR.,
      Petitioner,

vs.                            Case No.:  5:15cv79/RV/EMT

JULIE JONES,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (ECF No. 1).  Respondent filed a motion to dismiss the petition as untimely, with relevant portions of the state court record (ECF No. 13).  Petitioner responded in opposition to the motion (ECF Nos. 16, 19).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that the habeas petition should be dismissed as untimely.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Petitioner challenges the judgment of conviction and sentence entered in the Circuit Court in and for Bay County, Florida, Case No. 2010-CF-0769 (ECF No. 1 at 1).  The procedural background of that case is established by the state court record submitted by Respondent (ECF No. 13).[1]  Petitioner was charged with one count of lewd or lascivious battery on a person between the ages of 12 and 16 years (Ex. A at 6).  Following a jury trial (Ex. C), Petitioner was found guilty as charged (Ex. A at 107).  On March 3, 2011, the court adjudicated Petitioner guilty and imposed sentence of 15 years in prison with pre-sentence jail credit of 354 days (*id.* at 108–13).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D11-1216 (Ex. F).  Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (*id.*).  Petitioner filed a pro se initial brief (Ex. G).  The First DCA affirmed the judgment per curiam without written opinion on August 9, 2012 (Ex. H at 1).  The appellate court denied Petitioner's motion for rehearing on September 21, 2012 (*id.*

---

[1]Hereinafter all citations to the state court record refer to the electronically filed exhibits to Respondent's motion to dismiss (ECF No. 13) unless otherwise indicated.  Additionally, if a cited page has more than one page number, the court cites to the "Bates Stamp" page number.

at 7).  Wright v. State, 145 So. 3d 103 (Fla. 1st DCA 2012).  The mandate issued

October 10, 2012 (*id.* at 8).

On May 30, 2013, Petitioner filed a motion for post-conviction DNA testing in

the state circuit court, pursuant to Rule 3.853 of the Florida Rules of Criminal

Procedure (Ex. I at 1–13).  The circuit court denied the motion in an order rendered

November 22, 2013 (*id.* at 74–78).  Petitioner appealed the decision to the First DCA,

Case No. 1D14-0175 (Ex. I at 122, Ex. J at 1–21).  The First DCA affirmed per

curiam without written opinion on April 15, 2014 (Ex. J at 23).  Wright v. State, 136

So. 3d 1219 (Fla. 1st DCA 2014).  The mandate issued May 13, 2014 (*id.* at 24).

On June 10, 2014, Petitioner filed a motion for post-conviction relief in the state

circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex.

K at 1–21).  On July 20, 2014, the circuit court struck two of Petitioner's five claims

as facially insufficient, with leave to amend the insufficient grounds within sixty days

(*id.* at 55).  Petitioner filed an amended Rule 3.850 motion on August 19, 2014 (*id.* at

56–77).  The circuit court summarily denied the motion in an order rendered

September 8, 2014 (*id.* at 79-82).  Petitioner appealed the decision to the First DCA,

Case No. 1D14-4512 (Ex. L).  The First DCA affirmed per curiam without written

opinion on January 29, 2015 (Ex. M).  Wright v. State, 156 So. 3d 1085 (Fla. 1st DCA

2015).  The mandate issued February 24, 2015 (*id.*).

Petitioner filed the instant federal habeas action on April 8, 2015 (ECF No. 1

at 14).  He asserts the following grounds for relief:

> Ground One:  "Discovery/Brady violation:  State/police/Detective
> Brewer P.C.P.D. failed to disclose DNA test report results showing
> negative for victim (J.H.) on DNA items tested (favorable evidence for
> Defendant), and Detective Brewer's perjured testimony at my trial on 3-
> 3-2011, violating [sic] Federal and State discovery procedures (State
> 3.220), prosecutor's obligations [3.220](b)(4) material that negates
> Defendant's guilt, [3.220](f) additional discovery, and [3.220](j)
> continuing duty to disclose info, violates U.S. Constitution 14th
> Amendment right of due process."

> Ground Two:  "Counsel was ineffective for failing to object to limited
> showing of DVD of Defendant's statement to Detective Brewer (State
> Exhibit 1), replay[ed] to jury during deliberations at trial on 3-3-2011,
> which resulted in prejudice to Defendant; it contained evidence the jury
> would consider to compare it to Defendant's trial testimony, violates
> [sic] 6th and 14th Amendments of U.S. Constitution violating
> Defendant's right to a fair trial."

> Ground Three:  "Counsel was ineffective for failing to locate and
> interview material witness that was present at the alleged offense, along
> with the victim, who could have provided exonerating testimony for
> Defendant that nothing happened sexually, violating U.S. Constitution
> 6th and 14th Amendment of due process".

(ECF No. 1 at 5, 6, 8; *see also* ECF No. 1-1 at 6–18).

## II.   ANALYSIS

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-

132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of

limitation applies to the filing of a habeas petition by a person in custody pursuant to

a state court judgment.  The limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Respondent argues that the appropriate statutory trigger for the federal

limitations period is the finality date of the judgment of conviction, pursuant to

§ 2244(d)(1)(A) (*see* ECF No. 13 at 2).  Petitioner's conviction became final on

December 20, 2012, ninety (90) days after the First DCA denied Petitioner's motion

for rehearing on direct appeal.  *See* <u>Bond v. Moore</u>, 309 F.3d 770, 774 (11th Cir.

2002) (Florida prisoner's conviction became final 90 days after state court denied

prisoner's motion for rehearing).  Petitioner does not argue that a different statutory

trigger applies (*see* ECF Nos. 16, 19).  The allegations of Ground One and Petitioner's

allegations in his responses to the motion to dismiss, however, raise the issue of whether the factual predicate of Ground One could have been discovered, through the exercise of due diligence, prior to December 20, 2012.  Thus, the court will consider whether a different statutory trigger, § 2241(d)(1)(D), might apply.

Petitioner alleges as part of Ground One that on March 15, 2010, the day Petitioner was arrested, Detective Brewer took a buccal swab from him and J.H. (the victim), to be sent to the Florida Department of Law Enforcement ("FDLE") crime lab (ECF No. 1-1, Memorandum at 7; ECF No. 19 at 2).  Petitioner alleges police seized cushions and blankets from his couch on March 17, 2010, and noted the presence of human fluid on the items (ECF No. 1-1, Memorandum at 6‒7; ECF No. 19 at 1).  Petitioner alleges Detective Brewer stated in his pre-trial deposition that he "sent everything off to the lab" (ECF No. 19 at 2).  However, Detective Brewer testified at trial that he did not send any of the items collected from Petitioner's home to the FDLE for DNA testing (*id.*).  Petitioner alleges that on June 25, 2013, he sent a letter to the FDLE inquiring whether any evidence had been tested for DNA (ECF No. 1-1, Memorandum at 7; ECF No. 19 at 2).  Petitioner alleges he received a response from the FDLE three weeks later, with a copy of an FDLE lab report (*id.*). Petitioner alleges that the report shows that the victim's (J.H.'s) DNA was not found on any items seized from Petitioner's home (ECF No. 1-1, Memorandum of Law at 6‒9).  Petitioner alleges the State failed to disclose this DNA report (*id.*).  He also alleges Detective

Brewer testified falsely at trial when he testified that none of the items seized from Petitioner's home were tested for DNA (*id.*).

Petitioner submitted a copy of the FDLE lab report, dated April 16, 2010 (ECF No. 1-1 at 57). The report, together with a cover letter from the FDLE dated July 12, 2013, is also included in the record of the Rule 3.850 proceedings (Ex. K at 25–26). The FDLE report states that buccal swabs from Petitioner were submitted to the FDLE by the Panama City Police Department on March 24, 2010 (*id.*). The report states that DNA analysis was performed on a sample from the buccal swabs, and a complete DNA profile was obtained (*id.*). The report states that the DNA profile developed from the sample was entered into the Combined DNA Index System ("CODIS") (*id.*).

The FDLE report does not show that items seized from Petitioner's home were tested for DNA; nor does the report show that the victim's DNA was not found on items seized from Petitioner's home. Petitioner has not provided any factual support for his allegation that the State withheld results of DNA testing of items seized from Petitioner's home, or that Detective Brewer lied at trial when he testified that items seized from Petitioner's home were not tested for DNA. Therefore, there is no basis for applying § 2244(d)(1)(D) as the statutory trigger for the federal limitations period. *See, e.g.*, Scarlett v. Sec'y, Dep't of Corr., 404 F. App'x 394, 400–01 (11th Cir. 2010) (unpublished but cited as persuasive authority) (rejecting petitioner's argument that DNA report was a new factual predicate that could not have been discovered earlier

with due diligence and that thus restarted one-year clock, because DNA report was not exculpatory).  Because Petitioner has not shown that a statutory trigger other than § 2244(d)(1)(A) applies, the court will apply that trigger in calculating the federal deadline.

As previously discussed, Petitioner's conviction became final on December 20, 2012, ninety (90) days after the First DCA denied Petitioner's motion for rehearing on direct appeal.  *See* Bond, 309 F.3d at 774.  The federal limitations period began running the next day, on December 21, 2012, and expired one year later, on December 21, 2013.  *See* Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (limitations period should be calculated according to "anniversary method," under which limitations period expires on anniversary of date it began to run) (citing Ferreira v. Dep't of Corr., 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)).  Petitioner did not file his federal petition on or before December 21, 2013; therefore, it is untimely unless tolling principles apply and render it timely.

Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

In this case, Petitioner filed a Rule 3.853 motion for post-conviction DNA testing on May 30, 2013. However, Respondent correctly argues that the Eleventh Circuit has held that a Rule 3.853 motion is not a tolling motion for purposes of § 2244(d)(2) (*see* ECF No. 13 at 2–3). *See* Brown v. Sec'y for Dep't of Corr., 530 F.3d 1335, 1337–38 (11th Cir. 2008) (concluding that a DNA testing motion under Florida criminal rule was not an "application for post-conviction or other collateral review with respect to the pertinent judgment," for purposes of AEDPA's tolling statute); *see also, e.g.*, Brown v. Crews, No. 3:13cv64/MCR/EMT, 2014 WL 4409952, at *5 n.7 (N.D. Fla. Sept. 8, 2014) (unpublished) (petitioner's Rule 3.853 motion did not toll federal limitations period) (citing Brown); Boudreaux v. Crews, No. 3:12cv197/LAC/CJK, 2013 WL 1502159, at *3 (N.D. Fla. Mar. 25, 2013) (unpublished) (same), *Report and Recommendation Adopted by* 2013 WL 1502172 (N.D. Fla. Apr. 11, 2013); Reighn v. McNeil, No. 3:08cv505/RV/EMT, 2009 WL 3644805, at *1 (N.D. Fla. Dec. 7, 2011) (unpublished) (same).

Petitioner's next state post-conviction application was a Rule 3.850 motion; however, that motion was filed on June 10, 2014, after the federal limitations period expired on December 21, 2013. Therefore, the Rule 3.850 motion did not toll the limitations period. *See* Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001) (any post-conviction applications filed after the one-year federal limitations period expired do not toll the limitations period, because there was no period remaining to be tolled);

Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").

Petitioner argues he is entitled to equitable tolling of the federal limitations period, because he has been pursuing his rights diligently (ECF Nos. 16, 19).

"Because the time period specified in 28 U.S.C. § 2244 is a statute of limitations, not a jurisdictional bar, the Supreme Court has held § 2244(d) does not bar the application of equitable tolling in an appropriate case." Cole v. Warden, Ga. State Prison, 768 F.3d 1150, 1157 (11th Cir. 2014) (citing Holland v. Florida, 560 U.S. 631, 645, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010)). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649. As an extraordinary remedy, equitable tolling is "limited to rare and exceptional circumstances and typically applied sparingly." Cadet v. Fla. Dep't of Corr., 742 F.3d 473, 477 (11th Cir. 2014).

Equitable tolling is assessed on a case-by-case basis, considering the specific circumstances of the case. Hutchinson v. Florida, 677 F.3d 1097, 1098 (11th Cir. 2012); see Holland, 560 U.S. at 649–50 (clarifying that the exercise of a court's equity powers must be made on a case-by-case basis). The petitioner has the burden of establishing his entitlement to equitable tolling; his supporting allegations must be

specific and not conclusory.  Hutchinson, 677 F.3d at 1099.  "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence."  Holland, 560 U.S. at 653; *see also* Smith v. Comm'r, Ala. Dep't of Corr., 703 F.3d 1266, 1271 (11th Cir. 2012) (per curiam) (acknowledging petitioners are not required "to exhaust every imaginable option, but rather to make reasonable efforts").  Determining whether a factual circumstance is extraordinary to satisfy equitable tolling depends not on how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.  Cole, 768 F.3d at 1158 (quotation marks and citation omitted).

Petitioner appears to argue that his lack of awareness that a DNA test had been done on evidence seized from his home constitutes an extraordinary circumstance for purposes of equitable tolling (*see* ECF No. 16 at 2–3).  However, as previously discussed, there was no DNA testing done on evidence seized from Petitioner's home.  Petitioner's lack of awareness of an event that never occurred is not an exceptional circumstance.  Petitioner does not allege any other factual circumstance that served as an obstacle to his filing his federal habeas petition prior to December 21, 2013.  Therefore, he has not demonstrated his entitlement to equitable tolling.

Petitioner also argues he is entitled to review of his § 2254 petition through the "actual innocence" exception to the time bar (*see* ECF Nos. 16, 19).  He argues that

if the court considers the three claims raised in his federal petition, the court will find

that the jury could have been swayed to either acquit him or convict him of only the

lesser included offense of attempted lewd or lascivious battery or felony battery (ECF

No. 16 at 2; ECF No. 19 at 5).

In McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 185 L. Ed. 2d 1019

(2013), the Supreme Court held that there is an "equitable exception" to the statute of

limitations set forth in § 2244(d), but only when the petitioner presents new evidence

that shows it is more likely than not that no reasonable juror would have convicted

him.    133 S. Ct. at 1928, 1931, 1933.    The Court cautioned that "tenable

actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold

requirement unless he persuades the district court that, in light of [ ] new evidence, no

juror, acting reasonably, would have voted to find him guilty beyond a reasonable

doubt.'"  Id. (quoting Schlup v. Delo, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed.

2d 808 (1995) and citing House v. Bell, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L.

Ed. 2d 1 (2006)).

The Supreme Court stated in Schlup:

a substantial claim that constitutional error has caused the conviction of
an innocent person is extremely rare.  To be credible, such a claim
requires [a] petitioner to support his allegations of constitutional error
with new reliable evidence—whether it be exculpatory scientific
evidence, trustworthy eyewitness accounts, or critical physical
evidence—that was not presented at trial.

513 U.S. at 327; *see also* <u>Rozzelle v. Sec'y, Fla. Dep't of Corr.</u>, 672 F.3d 1000, 1011 (11th Cir. 2012) (quoting <u>Schlup</u>, 513 U.S. at 324, 327).  The Supreme Court has explained that "'actual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998).

Here, Petitioner was convicted of lewd or lascivious molestation of a person over the age of 12 but under the age of 16, a violation of Florida Statutes § 800.04(4)(a).  Petitioner was guilty of that offense if the evidence satisfied the following elements beyond a reasonable doubt:  (1) Petitioner engaged in sexual activity with a person 12 years of age or older but less than 16 years or age; or (2) Petitioner encouraged, forced, or enticed a person less than 16 years of age to engage in an act involving sexual activity.  *See* Fla. Stat. § 800.04(4)(a).  Florida law defines "sexual activity" as including the oral union with the sexual organ of another.  *See* Fla. Stat. § 800.04(1)(a).

Once again, Petitioner relies on the DNA report he obtained in 2013 as new, exculpatory evidence.  But again, the DNA report shows only that a DNA profile was obtained from a sample of Petitioner's buccal swab, and the profile was entered into a computer database.  The DNA report is not exculpatory, nor does it suggest in any way that Petitioner did not engage in sexual activity with the victim.  Therefore, the DNA report does not entitle Petitioner to review of his petition through the "actual

innocence" exception.  *See* <u>Scarlett</u>, 404 F. App'x at 401 (dismissing habeas petition as untimely, upon determining that petitioner's DNA evidence, though not particularly inculpatory, was not exculpatory, and thus insufficient to make a colorable showing of actual innocence).

Petitioner also appears to contend that redacted footage of his videotaped statement to Detective Brewer demonstrates his actual innocence, because it shows that he was drunk at the time he confessed to the crime (ECF No. 1-1 at 12; ECF No. 16 at 3).  He alleges if the jury had seen the entire video of his interview, the jury would have observed that his speech was slurred and mumbled, and that he slouched during the interview (*id.*).

Neither the Supreme Court nor the Eleventh Circuit has decided whether <u>Schlup</u> permits a claim of actual innocence based upon "new evidence" of a coerced or otherwise involuntary confession, with no new reliable evidence that the petitioner did not actually commit the acts which constituted the crime.[2]  The Eleventh Circuit's holding in <u>Rozelle</u> suggests that the Eleventh Circuit would not extend the exception to such circumstances.  In <u>Rozelle</u>, the court held that <u>Schlup</u>'s actual innocence "gateway" does not extend to a petitioner who committed the act or acts that

---

[2]Similarly, neither court has decided whether <u>Schlup</u> permits a claim of actual innocence based on "new reliable" evidence of a complete affirmative defense that renders the conduct of conviction wholly noncriminal and requires acquittal.  *See* <u>Rozelle</u>, 672 F.3d at 1015.

constituted the crime and whose alleged "actual innocence" of the conviction is premised on being guilty of only a lesser degree of the crime.  672 F.3d at 1015.

Here, the trial transcript demonstrates that the jury saw and heard a video recording of Petitioner's interview with Detective Brewer; however, the jury did not see the entire interview (Ex. C at 41–54).  During the portion of the interview that was published to the jury, Petitioner told Detective Brewer that he "licked [the victim] in the balls, . . . [and] sucked his" penis (*id.* at 46, 47, 53).  Petitioner told Detective Brewer that the victim "licked my balls" (*id.* at 47).  Petitioner also told Detective Brewer, "I'm drunk, I mean, I'm, I'm f***ed up, I'm, I'm — Shit." (*id.* at 49).  Petitioner continued, "I've been drunk.  I'm an alcoholic, man" (*id.* at 53).  During defense counsel's cross-examination of Detective Brewer, Brewer agreed that Petitioner told him "again and again" throughout the interview that he had been drinking (Ex. C at 55).  Defense counsel asked, "He [Petitioner] does stumble over some of his speech, doesn't he?" (*id.* at 56).  Detective Brewer responded, "I think that is more nerves than anything" (*id.*).

Petitioner testified on his own behalf at trial (Ex. C at 65–80).  He testified that he had previously been convicted of twenty-five felonies and thirty-six crimes involving dishonesty (*id.* at 66).  Petitioner testified that he had a stroke in 2008, which rendered him disabled (*id.* at 65).  Petitioner testified that he was an alcoholic, and had been since he was a teenager (*id.* at 67).  He testified that at the time of the

incident with the victim, he drank an average of one-and-a-half liters of vodka a day (*id.*).  Petitioner testified he had been drinking at the time of his interview with Detective Brewer (*id.* at 69, 77).  He testified that he did not have sexual contact with, or touch, the victim (*id.* at 69–70).  Petitioner testified that he could not explain why he told Detective Brewer that he had sexual contact with the victim (*id.* at 69).  He testified that he must have been lying to Detective Brewer, and that he did not remember the interview (*id.* at 70, 74–76).

Petitioner asserts that if the jury had seen the video of the entire interview with Detective Brewer, they would have observed that Petitioner's speech was slurred and mumbled, and he slouched.  However, the jury heard Petitioner tell Detective Brewer that he was drunk at the time of the interview, and Petitioner reiterated this in his trial testimony.  Petitioner has failed to show that no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt if the entire interview had been published to the jury.  Therefore, this argument fails to qualify for the "actual innocence" exception.

As Petitioner's third argument, he suggests that the jury would not have convicted him of the charged offense if defense counsel had presented testimony from Datrenne "Dae Dae" Galloway (ECF No. 1-1 at 14–15; ECF No. 16 at 2, 4; ECF No. 19 at 3–5).  Petitioner alleges "Dae Dae" was present at Petitioner's house during the

entire time that the victim was there (ECF No. 1-1 at 14−15).  He alleges "Dae Dae" would have testified that "nothing happened sexually" (*see* ECF No. 1 at 8).

Petitioner has not proffered any evidence, let alone trustworthy evidence, that "Dae Dae" would have testified that "nothing happened sexually."  Indeed, Petitioner has proffered no reliable evidence of what "Dae Dae" would have said on the stand if he had testified at Petitioner's trial.  In the absence of any such evidence, Petitioner cannot satisfy the "actual innocence" exception.

In sum, Petitioner has not supported his "actual innocence" argument with any new reliable evidence showing that he did not commit the acts that constituted the lewd or lascivious molestation offense.  Therefore, he has failed to show he is entitled to review of his federal habeas claims through the "actual innocence" exception to the time bar.

## III.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Cases.  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.  Rule 11(a) additionally provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That Respondent's motion to dismiss (ECF No. 13) be **GRANTED**.

2.    That the habeas petition (ECF No. 1) be **DISMISSED** with prejudice as untimely.

3.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 29th day of March 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**